**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANK T. MILLER,            :
                        :    Civil Action No. 04-2000 (WJM)
        Petitioner,   :
                        :
        v.             :    **OPINION**
                        :
TERRANCE MOORE, et al.,    :
                        :
        Respondents.   :

**APPEARANCES:**

    FRANK T. MILLER, Petitioner pro se
    East Jersey State Prison
    #58406/SBI#44122A
    Lock Bag R
    Rahway, New Jersey 07065

    WALTER C. KOWALSKI, ESQ.
    OFFICE OF NEW JERSEY ATTORNEY GENERAL
    Division of Law
    Richard J. Hughes Justice Complex
    25 Market Street, P.O. Box 112
    Trenton, New Jersey 08625-0112
    Attorneys for Respondents

**MARTINI**, District Judge

    Petitioner Frank T. Miller, a prisoner currently confined at East Jersey State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the denial of parole and the decision of the New Jersey State Parole Board to impose a 25-year future eligibility term. For the reasons stated herein, the Petition will be denied for failure to state a federal constitutional deprivation.

I.   <u>BACKGROUND</u>

In June 1976, a jury convicted petitioner Frank T. Miller ("Miller") of murder, robbery, attempted robbery, possession of a firearm, and conspiracy to commit armed robbery.  He was sentenced to life imprisonment on the murder and robbery convictions, two to three years on the conspiracy conviction and three to five years on the weapon charge.  These sentences were to be served consecutive to the life sentence.[1]

Miller became eligible for parole in 1999.  He had an initial parole hearing on July 1, 1999.  On October 13, 1999, a two-member panel of the Parole Board denied Miller's request for release on parole and referred the matter to a three-member panel for determination of a future parole eligibility term ("FET") outside the presumptive FET.  In its October 1999 decision, the

---

[1]  The sentencing court based its decision as follows:

> This defendant committed [sic] crimes in question while on probation, a matter of less than five months after imposition of a three year period of probation: any lesser punishment would deprecate [sic] the seriousness of the crimes committed; other less restrictive sanctions have been applied to this defendant recently or frequently; there is undue risk that during the period of suspended sentence or probation the defendant will commit another crime; the defendant is in need of correctional services that can be provided effectively only in an institutional setting and such services are reasonably available; imprisonment of some [sic] who had done what this defendant did is necessary to achieve socially justified deterrent purposes, and the punishment of defendant is an appropriate vehicle to that end.  (Da2, July 27, 1976 Judgment of Conviction, entered on August 6, 1976).

panel gave the following reasons for denying parole: (1) extensive prior criminal record; (2) nature of criminal record increasingly more serious; (3) presently incarcerated for multi-crime conviction; (4) current opportunity on probation terminated for the commission of new offenses; (5) prior opportunities on probation and parole failed to deter criminal behavior; (6) prior opportunities on probation and parole have been violated in the past; (7) prior incarceration did not deter criminal behavior; (8) numerous, persistent and serious institutional infractions resulting in the loss of commutation time and confinement in administrative segregation; (9) serious substance abuse problem has not been sufficiently addressed; (10) lack of an adequate parole plan to assist in reintegration into the community; and (11) commission of a crime while incarcerated.  The panel also found the following mitigating factors: (1) participation in programs specific to behavior; (2) participation in institutional programs; and (3) able to state several points about the 12 step Alcohol Anonymous program.  (Da10).  These factors were found insufficient to counter the substantial reasons for denial of parole and overcome the likelihood that Miller will recidivate if released on parole.  Therefore, the panel denied parole and recommended that petitioner refrain from commission of further infractions, to participate in substance abuse counseling and

institutional programs geared toward reintegration, and to participate in one on one counseling. (Da10).[2]

On March 8, 2000, the three member panel met with Miller to establish an FET. (Da11). The panel issued a decision on September 7, 2000, concurring with the two-member panel in denying parole and finding the presumptive FET to be inappropriate in petitioner's case. The three member panel imposed a 25-year FET. (Da12-13). Miller sought reconsideration of both panel decisions. On October 11, 2000, a Board Panel affirmed both the October 13, 1999 decision to deny parole and the September 2000 decision to impose a 25-year FET. (Da24). However, the Board Panel did amend the October 13, 1999 to include additional mitigating factors as noted by petitioner: (1) average institutional reports; (2) commutation time restored; and (3) minimum custody status achieved. (Da24, Da10).

Miller filed an administrative appeal. On November 29, 2000, a full Board Panel affirmed both the denial of parole and the imposition of a 25-year FET. (Da25). Miller appealed to the Superior Court of New Jersey, Appellate Division. He also sought appointment of counsel, indigent status, and free transcripts. By Order dated February 13, 2001, the Appellate Division denied Miller's request for appointed counsel and free transcripts, but

---

[2] "Da" connotes the respondents' appendix submitted with the answer to the petition.

granted petitioner indigent status.  However, the court granted Miller's request for a stay of the appeal on March 26, 2001, while Miller filed a petition for certification to the Supreme Court of New Jersey.  The New Jersey Supreme Court denied certification on October 2, 2001.

Thereafter, Miller filed several motions with respect to his appeal from denial of parole and imposition of a 25-year FET.  On May 24, 2001, the Appellate Division granted Miller's motion to settle the record and to supplement the record.  On November 1, 2001, the court denied Miller's motion to file an abbreviated transcript but also relieved petitioner from providing a full transcript.  The State Parole Board, however, was permitted to obtain the transcript and furnish it as part of the record.  The State provided a copy of the transcript to the court on January 25, 2002.  Finally, the Appellate Division denied Miller's motion to suppress respondents' brief and impose sanctions for non-compliance with N.J.Ct.R. 2:6-4(b) and 2:9-9.

On February 20, 2003, the Appellate Division affirmed the Board's decisions to deny parole and impose a 25-year FET. (Da62-67).  The New Jersey Supreme Court denied certification on May 22, 2003.  Miller filed this federal habeas petition on or about April 28, 2004.  He then sought appointment of counsel and

an independent psychologist.[3]   Respondents answered the petition
on October 22, 2004.

## II.   STANDARD OF REVIEW OF § 2254 CLAIMS

The Court recognizes that a pro se pleading is held to less
stringent standards than more formal pleadings drafted by
attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v.
Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition
should be construed liberally and with a measure of tolerance.
See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v.
Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Miller is
a pro se litigant, the Court will accord his petition the liberal
construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective
Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas
matters must give considerable deference to determinations of the
state trial and appellate courts.  See 28 U.S.C. § 2254(e);
Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122
S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.
1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section
2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to

---

[3]  Because the Court finds the petition to be without merit,
the application for appointment of counsel and an independent
psychologist will be dismissed as moot.

6

any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue. The first clause, or condition, is referred to as the "contrary to" clause. The second condition is the "unreasonable application" clause. Williams, 529 U.S. at 412-13. In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case." Id. at 413. Habeas relief may not be granted under the "unreasonable application" condition unless a state court's

7

application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v.</u> <u>Brennan</u>, 528 U.S. 824 (1999).

Consonant with <u>Williams</u>, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  <u>See</u> <u>Werts</u>, 228 F.3d at 196-97; <u>Matteo</u>, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  <u>Werts</u>, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  <u>Id</u>.  AEDPA prohibits such <i>de novo</i> review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was

objectively unreasonable.  _Id_.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  _Id_.; _see_ _also_ _Jacobs v. Horn_, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  _Chadwick v. Janecka_, 312 F.3d 597, 605-06 (3d Cir. 2002), _cert_. _denied_, 538 U.S. 1000 (2003)(_citing_ _Weeks v. Angelone_, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  _See_ _Hameen v. State of Delaware_, 212 F.3d 226, 248 (3d Cir. 2000), _cert. denied_, 532 U.S. 924 (2001); _Purnell v. Hendricks_, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  _See also_ _Schoenberger v. Russell_, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  _Id_.; _see_ _also_ 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  _See_ _Duncan_, 256 F.3d at 196 (_citing_ 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must

clear a high hurdle before a federal court will set aside any of the state court's factual findings." <u>Mastracchio v. Vose</u>, 274 F.3d 590, 597-98 (1st Cir. 2001).

### III.   <u>STATEMENT OF CLAIMS</u>

Petitioner asserts the following grounds for relief in his prolix, 98-page petition:  (1) the October 13, 1999 decision by a two member Board panel denying parole was arbitrary, capricious, and unreasonable, and denied petitioner of his Fourteenth Amendment right to due process; (2) the March 8, 2000 decision by a three member Board Panel imposing a 25-year FET was arbitrary, capricious, and unreasonable, and denied petitioner of his Fourteenth Amendment right to due process; (3) the December 5, 2000 decision by the full Board panel affirming the denial of parole and the imposition of a 25-year FET was arbitrary, capricious, and unreasonable, and denied petitioner of his Fourteenth Amendment right to due process; (4) the Appellate Division abused its discretion in affirming the Parole Board's decision to deny parole and impose a 25-year FET, and violated petitioner's constitutional right to due process; (5) both the New Jersey Appellate Division and the Supreme Court abused their discretionary powers and violated petitioner's right to due process and equal protection in denying petitioner's motion for a free trancript and appointment of counsel; (6) the Appellate Division abused its discretionary powers and violated

10

petitioner's right to due process in denying petitioner's motion seeking sanctions against respondents for non-compliance with state court rules; (7) the Appellate Division abused its discretionary powers and violated petitioner's right to due process in denying petitioner's motion for discovery and his "right to know" request for information from the New Jersey Department of Corrections ("NJDOC"); and (8) the New Jersey Supreme Court abused its discretionary powers and violated petitioner's right to due process when it denied petitioner's petition for certification.  The Court will collapse grounds one, two, three, four, and eight under one heading dealing with the issue of whether the decisions by the Parole Board, and as affirmed by the state courts, regarding denial of parole and the imposition of an extended FET, were so arbitrary and unreasonable as to constitute a denial of due process.  The remaining claims will be addressed under separate headings.

The respondents answer the petition by asserting that the state court decisions in this matter were not based on an unreasonable determination of the facts, nor did they result in an unreasonable application of clearly established federal law. The State further contends that the Parole Board did not abuse its discretion in denying parole and imposing a 25-year FET, nor did the Board violate petitioner's constitutional rights. Finally, the Board argues that Miller has no right to appointed

counsel, free transcripts, or broad-ranging discovery as requested.

IV.   ANALYSIS

As a preliminary matter, it must be remembered that there is no federal constitutional right to parole; states, however, may create a parole entitlement protected by the Due Process Clause. See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).  See also Board of Pardons v. Allen, 482 U.S. 369 (1987); Prevard v. Fauver, 47 F.Supp.2d 539, 545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).

Both federal and state courts have held that the New Jersey parole statute contains language creating an expectation of parole eligibility entitled to some measure of due process protections.  See Williams v. New Jersey State Parole Board, 1992 WL 32329, *2 (D.N.J. Feb. 4, 1992), aff'd, 975 F.2d 1553 (3d Cir. 1992); New Jersey State Parole Board v. Byrne, 93 N.J. 192, 203 (1983), aff'd, 975 F.2d 1553 (3d Cir. 1992).  Judge Lifland of this Court has held that these cases remain good law even after taking into account the rule announced by the Supreme Court in Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted), that liberty interests created by state law "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,

12

nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."
See Watson v. DiSabato, 933 F.Supp. 390, 392-93 (D.N.J. 1996).

The question remains what process is due.  The Supreme Court of New Jersey has stated that

> Only a few basic procedures are required to deal with the risks of erroneous or arbitrary determinations in this context.  We conclude that the process required is notice of the pendency of the parole disposition, a statement by the objecting judge or prosecutor of the reasons why the punitive aspects of the sentence have not been fulfilled, and the opportunity for the prisoner to respond in writing to that statement of reasons.  No hearing, confrontation, or counsel issues are implicated here.

Byrne, 93 N.J. at 211.  See also Watson, 933 F.Supp. 390 (prisoner has liberty interest in parole decisions, including notice of determination, statement by the government, and opportunity for prisoner to submit written response).

A.   The Parole Board's Decisions to Deny Parole and Impose a 25-Year FET Were Not Arbitrary or Capricious

Miller contends that the Parole Board's decisions to deny parole and impose a 25-year FET were arbitrary and capricious, and violated petitioner's right to due process.  The State counters that the decisions were supported by sufficient credible evidence and were not contrary to law.  The Court rejects petitioner's claims, finding that the Parole Board's decisions denying parole and imposing a 25-year FET were objectively

reasonable and in accordance with the established law and administrative regulations.[4]

In a § 2254 proceeding, state-court determinations of factual issues shall be presumed to be correct and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  See also Meyers v. Gillis, 93 F.3d 1147, 1149 n.1 (3d Cir. 1996).  In addition, district courts are not to "second-guess parole boards" on federal habeas review, and the requirements of substantive due process are satisfied if there is some basis for the challenged

---

[4] The Parole Act of 1948, in effect when Miller committed the crime for which he is currently incarcerated (in late 1976), predicated parole eligibility on a finding "that there is a reasonable probability that, if such prisoner is released, he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society."  N.J.S.A. 30:4-123.14 (repealed 1979).

Under the Parole Act of 1979, parole eligibility is predicated on likely recidivism alone.  "An adult inmate shall be released on parole ... unless information supplied in the report filed pursuant to [N.J.S.A. 30:4-23.54] or developed or produced at a hearing ... indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the law of this State if released on parole at such time."  N.J.S.A. 30:4-123.53a (amended 1997).

The parole eligibility standard of the Parole Act of 1979 applies to those serving a sentence at the time the 1979 Act took effect, such as Miller.  N.J.S.A. 30:4-123.46a; Trantino v. New Jersey State Parole Bd., 154 N.J. 19, 27 (1998).  The standard was revised again in 1997; the 1997 amendment does not apply to inmates sentenced before its effective date.  Trantino v. New Jersey State Parole Bd., 331 N.J. Super. 577, 605 (App. Div. 2000), aff'd in part, modified in part, 166 N.J. 113 (2001).

decision.  Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002); Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001). Furthermore, "[t]he relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent'." Hunterson, 308 F.3d at 246-47.

At issue here is Miller's contention that the denial of parole and the extended FET is arbitrary and unsupported by law. Pursuant to the Parole Act of 1979, the Parole Board may establish a Future Eligibility Term outside the guidelines if the guidelines term "is clearly inappropriate in consideration of the circumstances of the crime, the characteristics and prior criminal record of the inmate and the inmate's institutional behavior." Williams v. New Jersey State Parole Bd., 1992 WL 32329, *5 (D.N.J. Feb. 4, 1992) (citing N.J.S.A. § 30:4-123.56(b); N.J.A.C. § 10A:71-3.21(d)).  In N.J.A.C. 10A:71-3.21(d), the Parole Board is required to consider specific enumerated factors in determining whether the presumptive FET term is inappropriate.  These enumerated factors are found at N.J.A.C. 10A:71-3.11(b), which lists 23 separate factors to be considered by the Parole Board in determining parole

eligibility.[5]  Section 10A:71-3.11(b) also permits consideration of "any other factors deemed relevant."

Miller alleges that the Parole Board failed to consider mitigating factors of his participation in rehabilitative programs dealing with his substance abuse problems, his efforts to enroll in other institutional programs, his average to above average institutional reports, his minimum custody status, and the restoration of commutation time.  He complains that the Board relied solely on Miller's early years in prison without giving to consideration to his institutional behavior and progress towards reintegration into society since 1995.[6]  However, it is clear

---

[5] N.J.S.A. 30:4-123.53(a) provides that, "An adult inmate shall be released on parole at the time of parole eligibility, unless information supplied in the report ... or developed or produced at a hearing ... indicates by a preponderance of the evidence that the inmate has failed to cooperate in his or her own rehabilitation or that there is a reasonable expectation that the inmate will violate conditions of parole ... if released on parole at that time."  The rule set forth in N.J.A.C. 10A:71-3.11, listing the factors to be considered in making parole decisions, was adopted to implement this statutory standard .  In re Trantino Parole Application, 89 N.J. 347, 366 (1982).

[6] Miller also states that the Parole Board failed to conduct annual reviews as required by statute.  N.J.S.A. 30:4-123.52(c) and N.J.A.C. 10A:71-3.6(d) specifically mandate that the Parole Board shall annually monitor the progress of each adult inmate and provide the inmate with a written statement of any changes in his parole eligibility.  Miller contends that the Board's failure to do this before 1999 resulted in his denial of parole.  He claims that the Board should have informed him and guided him to participate in the types of programs and counseling they determined was necessary for his release on parole. However, this issue was litigated and rejected by this district court in Miller, et al., v. Gregoriori, et al., Civil No. 98-1134 (JAP)(D.N.J. Aug. 27, 2001), and by the Third Circuit in Gibbone

from the record provided that the Parole Board considered substantial evidence that indicated a high probability of recidivism and that Miller would likely violate conditions of parole if released.

Section 10A:71-3.11(b) specifically requires consideration of such factors as the commission of a crime while incarcerated; the commission of serious disciplinary infractions; the nature and pattern of previous convictions; adjustment to previous probation, parole and incarceration; the facts and circumstances of the offense, including aggravating factors surrounding the offense; a pattern of less serious disciplinary infractions; participation in institutional programs which could have led to the improvement of problems diagnosed at admission or during incarceration; mental and emotional health; and statements by the

_____

v. Terhune, et al., Civil No. 99-6091 (June 14, 2001). Therefore, this Court will dismiss petitioner's attempt to re-litigate this issue which has already been determined by the courts.

Miller also repeatedly contends in his lengthy petition that his parole hearings were not timely commenced. Nevertheless, it is plain from the record that Miller did receive a hearing as required. Accordingly, any procedural error resulting from a tardy hearing are considered cured by holding a new hearing that complies with due process. Johnson v. Paparozzi, 219 F. Supp.2d 635, 642 (D.N.J. 2002).

Finally, Miller makes a spurious and unsupported allegation that Parole Board Director Consovoy was under investigation for taking bribes from mob inmates for parole release. Without more, the Court will not consider this baseless contention by Miller.

inmate reflecting on the likelihood that he or she will commit another crime.

Here, in its October 13, 1999 decision, the two member panel of the Parole Board discussed the relevant factors as set forth above in denying parole and referring the matter to a three member panel for imposition of an extended FET beyond the presumptive term.  The panel's decision was based on the following reasons:  Miller's extensive, serious, and escalating criminal background and his failure to benefit from prior parole and probation, including the fact that he committed offenses while on parole and probation[7]; his extensive institutional disciplinary record, including 58 prison violations, some of them involving acts of violence and serious offenses, which indicate major behavioral problems and the likelihood of recidivism; his failure to participate in institutional programs to address his admitted substance abuse addiction[8]; his loss of commutation time, the fact that he is presently incarcerated for a multi-crime conviction that was committed while he was on

---

[7]  The Board panel noted that Miller's criminal record has become increasingly more serious over time.

[8]  The panel acknowledged that Miller was able to show some knowledge and participation in the 12-step AA program.  However, the Board panel noted that from 1976 to 1995, Miller made no effort to participate in behavioral or drug and alcohol abuse programs.  Consequently, the panel recommended one-on-one counseling, and further participation in substance abuse programs and other institutional programs geared toward reintegration.

probation; the commission of a serious crime while incarcerated; prior opportunities on community supervision had failed to deter criminal behavior; prior incarcerations had failed to deter criminal behavior; and Miller's lack of an adequate parole plan to assist in his successful reintegration into the community. (Da10).

On September 7, 2000, the three member panel concurred with the two member panel in denying parole and imposed a 25-year FET. The 12-page September 2000 decision discussed the panel determination of the extended FET in more detail, relying on the same factors as noted by the two member panel.  On reconsideration, on October 11, 2000, the panel affirmed its decision as to the 25-year FET, but did amend the decision to include mitigating factors raised by Miller, namely, Miller's minimum custody status, his average institutional reports, and the restoration of commutation time.  These factors were not sufficient to outweigh the many and overwhelming factors listed by the panel to deny parole and impose an extended FET.  The full Board also affirmed the panel decisions based on the numerous factors cited by the panels in denying parole and imposing a 25-year FET.

In affirming the denial of parole and extended FET, the Appellate Division observed, citing state law, that Parole Board determinations are not to be reversed unless they are arbitrary

19

or an abuse of discretion, and that the court's limited scope of
review required deference to the expertise of the Parole Board.
(App. Div. Opinion, February 20, 2003, Da62-67).  The court
concluded from review of the record that the Parole Board's
decisions were not arbitrary or capricious, and that there was
substantial credible factual evidence in the record to justify
the Parole Board's decision that Miller had not reached his
rehabilitative potential requiring a 25-year FET to be imposed.
(Id.).  The Appellate Division specifically found:

> From 1976 to 1994, Miller participated in no institutional
> programs and did nothing to help himself while he
> simultaneously was involved in institutional infractions,
> including the stabbing of a fellow inmate.  Miller points to
> the enormous progress he has made since 1995, to the fact he
> has had only one institutional infraction in ten years, and
> to the programs in which he voluntarily participated,
> including substance abuse programs, particularly over the
> last six years.  However, his recent progress does not
> suggest that there is no "likelihood" that he will commit
> another crime once paroled, given the lengthy nature of his
> criminal record and his longstanding substance and
> psychological problems.  In any event, we must defer to the
> Board's decision in this regard, recognizing that Miller's
> progress will be subject to annual review.
>
> Given Miller's record over thirty-five years, the Board
> cannot be said to have been arbitrary or unreasonable in
> concluding that he needs more counseling and psychotherapy
> "over a period of time far greater than a presumptive future
> parole eligibility term could provide."

(Da65-66).[9]

_____

[9]  The Appellate Division also considered Miller's
contention on appeal that the Board imposed unattainable
conditions for parole that Miller could not meet with respect to
one-on-one counseling with a trained psychologist.  Miller
asserted that one-on-one counseling was not available at the

Thus, the Appellate Division affirmed substantially for the reasons set forth by the Parole Board.  This Court is in agreement with the Appellate Division that the decision of the Parole Board comports with state law and is supported by the record.  Certainly, this Court can discern no due process violation in the denial of parole, and the 25-year FET is not so long as to shock the conscience given Miller's violent criminal history and numerous institutional violations and crimes, which strongly suggests that he is likely to recidivate if released on parole.  Further, Miller has failed to present clear and convincing evidence to rebut the factual determinations of the Parole Board and the Appellate Division, or to suggest that the Parole Board or Appellate Division applied an incorrect standard in determining his eligibility for parole.  Miller's arguments that the Board's decisions and that of the Appellate Division were arbitrary and unreasonable is patently unsupported by the record.  Thus, the Court concludes that the Parole Board's denial of parole and imposition of a 25-year FET is not egregious enough to "shock the conscience" or constitute arbitrariness in

---

prison where he is incarcerated.  The Appellate Division found that Miller had participated in one-on-one counseling in 1997 and 1998 at Riverfront State Prison, and from October to December 1999 at Bayside State Prison, contradicting Miller's argument that such counseling was not available.  However, the Appellate Division did rule that if Miller is not offered the opportunity to participate in the counseling or programs recommended by the Board, he cannot be denied parole.  (Da66).

21

violation of Miller's rights.   See Hunterson, 308 F.3d at 247-48.

In sum, this Court finds that the Parole Board's decisions and the Appellate Division's decision were not based on an unreasonable determination of the facts in light of the evidence presented.[10]  The decision to extend the FET beyond the presumptive term was made consistent with the applicable state law, which included specific enumerated factors to guard against arbitrary decisions.   Therefore, Miller is unable to show a federal constitutional deprivation and he is not entitled to federal habeas relief on this particular claim.

_____

[10]  The record shows that Miller committed numerous and serious crimes and failed to benefit from prior parole or probation.  The September 7, 2000 Board panel decision noted Miller's continuous and persistent pattern of criminal and maladaptive behavior that began as a child and which became increasingly more serious as an adult, escalating to robbery and murder of a police officer in 1976 while on probation.  Miller also had an extensive record of institutional violations, numbering about 58 infractions, some of them for serious crimes involving violent assaultive behavior and the stabbing of an inmate.  As a consequence of these many infractions, Miller lost 1800 days of commutation time (although some of it has since been restored).  Miller also failed to enroll and participate in substance abuse programs during the first 19 years of his incarceration.  It was not until 1995, a few short years before his impending parole eligibility hearing in 1999, that Miller began to seek counseling and programs geared towards reintegration and dealing with his substance abuse and psychological problems.  Thus, although the Board recognized Miller's recent positive changes, they were not sufficient to demonstrate that there was no likelihood of recidivism given Miller's extensive past criminal and institutional record. Finally, the Appellate Division reviewed confidential material filed by the Board which justified petitioner's need for long term counseling and monitoring for an extended period of time.

B.  Petitioner Was Not Entitled to Counsel

Miller also argues that the Appellate Division abused its
discretion and violated his right to due process in denying
appointment of counsel on his appeal from the Board's denial of
parole.  The State counters that Miller is not constitutionally
or otherwise entitled by law to appointment of counsel on a civil
matter, which challenges the validity of a State administrative
agency decision.  See Caruth v. Pinkney, 683 F.2d 1044, 1048 (7th
Cir. 1982), cert. denied, 459 U.S. 1214 (1983); Watson v. Moss,
619 F.2d 775, 776 (8th Cir. 1980).

This Court finds no deprivation of a federal constitutional
right in the Appellate Division's decision to deny appointment of
counsel for petitioner on his civil appeal from the Parole
Board's final decision denying parole.  Moreover, Miller has
demonstrated that he is capable of presenting his issues on
appeal, and that he had all of the relevant information necessary
to prepare his appeal, including his own first-hand knowledge of
the alleged incidents.  Therefore, this claim will be denied for
failure to state a cognizable claim of a federal constitutional
deprivation.

C.  Petitioner Not Entitled to Free Transcripts

This is a matter of state procedural law not subject to
habeas review.  Under the New Jersey Court Rules, an indigent
civil appellant is not typically entitled to a free transcript.

See N.J.Ct.R. 2:5-3, comment; and R. 2:7-1, comment.  However, there are extraordinary circumstances in which an indigent civil appellant may obtain free transcripts, such as where the litigant seeks to protect an important civil right.  For instance, in termination of parental rights litigation and civil commitment proceedings, the state court has allowed a free transcript.

These circumstances sharply contrast with the petitioner's case in this instance.  Miller is not subject to lose his liberty, since he already is incarcerated.  Thus, there are no extraordinary circumstances involving the loss of some important and protected civil right which would give rise to a cognizable due process claim.  Accordingly, this claim is denied.

D.  Denial of Discovery and Sanctions Motions

Again this claim involves a matter of state procedural law that is not cognizable in a federal habeas action.  Issues of state evidentiary and procedural law are not normally cognizable on federal habeas review.  Estelle v. McGuire, 502 U.S. 62 (1991).  Moreover, Miller did receive the items of record without cost, except the confidential psychological reports.  Indeed, his voluminous pleadings indicate that Miller has had the benefit of the relevant record.  Additionally, Miller's motion for sanctions against the State also fails to implicate any constitutional rights.  Accordingly, these claims will be denied for failure to state a claim.

24

## V.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

## V.   CONCLUSION

For the reasons set forth above, the Petition will be denied in its entirety.  Petitioner's application for appointment of counsel and an independent psychologist (Docket Entry No. 10) is denied as moot.  An appropriate order follows.

s/William J. Martini

_____
WILLIAM J. MARTINI
United States District Judge

Dated: 12/22/05

25